UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MELISSA MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-00049-SEB-DML |
| | ) | |
| SUNMAN-DEARBORN COMMUNITY | ) | |
| SCHOOLS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now before the Court is Defendants' Amended Motion for Summary Judgment [Dkt. 48].[1]  Plaintiff Melissa Myers brings this action against her former employer, Defendant Sunman-Dearborn Community Schools ("Sunman-Dearborn") and Sunman-Dearborn Principal Kelly Roth alleging that Defendants interfered with her rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615, *et seq.* ("FMLA") and/or retaliated against her for having engaged in protected activity under the FMLA; discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act ("ADAAA"); and that Ms. Roth violated Ms. Myers's rights under the Equal

---

[1] The Court granted Defendants' request to withdraw their summary judgment motion directed at Plaintiff's original complaint and file this amended motion after Plaintiff was given leave to file an amended complaint.

1

Protection Clause of the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.  For the reasons detailed below, we GRANT Defendants' Motion for Summary Judgment.

### Factual Background

Ms. Myers was hired as an instructional assistant ("IA") at Bright Elementary School within the Sunman-Dearborn Community Schools ("the School") system on September 19, 2001.  She worked in that capacity until she resigned her employment seventeen years later, effective November 16, 2018.  At the time she resigned, Ms. Myers was supervised by Bright Elementary School's first-year principal, Ms. Roth, who had assumed that role only a few months earlier at the beginning of the 2018–2019 school year.

**Defendant's Applicable Employment Policies**

Throughout the time period relevant to this litigation, pursuant to the School's policies Ms. Myers accrued eight paid sick days and three paid personal days for a total of eleven paid days of leave each school year.  Ms. Myers claims that school employees are not permitted to report for work if they are sick with a communicable disease or have an elevated temperature, but Defendants maintain that that rule applies only to students. School employees who must be absent from work due to illness are required to phone-in their absences.

In addition to FMLA protections, the School maintains an employee medical leave benefit providing for a medical leave up to one year if approved by the school board. Specifically, the medical leave benefit policy states in relevant part that "[m]edical leave needed beyond the 12-week FMLA may be granted for up to one (1) year with board

approval." Dkt. 50-13 at 5. This benefit is set forth in the School's Non-Certified Staff Employee Handbook in a section separate from the School's FMLA policy. *Id.*

The School's discipline policy provides that "in the event of an infraction of Corporation rules or the laws of the State of Indiana by a support staff member, it shall be the policy of the School Board to take appropriate disciplinary measures up to and including dismissal." Dkt. 52-24.

**Plaintiff's Attendance During the 2017–2018 School Year**

Sadly, Ms. Myers experienced two personal tragedies within the two years preceding the 2017–2018 school year. Ms. Myers's mother, who lived with Ms. Myers and her husband, passed away in 2015. Then, in May of 2017, Ms. Myers's husband of many years died unexpectedly. Following her husband's sudden death, Ms. Myers returned to work at the beginning of the 2017–2018 school year but was still grieving and struggled with depression upon her return to work.

As an IA, Ms. Myers was expected to work 7.5 hours per day for 180 days per school year, or a total of 1,350 hours per school year. During the 2017–2018 school year, Ms. Myers was absent 14.5 days in excess of her 11 allotted paid leave days. Separate from these absences, Ms. Myers applied for and was approved for FMLA leave for her depression from March 1, 2018, to April 16, 2018. After realizing that she was still not well enough to return to work at the end of her FMLA leave, Ms. Myers requested and was granted an extension of her medical leave through May 25, 2018. Due to her absences and medical leave, Ms. Myers worked a total of only 761.25 hours in the 2017–

3

2018 school year.  To our knowledge, Ms. Myers was not disciplined for these absences or any other violation of the attendance policy that school year.

**Plaintiff's Attendance Through Mid-November 2018 of the 2018–2019 School Year**

The 2018–2019 school year—Ms. Roth's first year as principal—began on August 8, 2018.  In September 2018, Ms. Myers contracted pneumonia after which she suffered post-pneumonia bronchitis.  After recovering from the pneumonia and bronchitis, Ms. Myer suffered four bouts of streptococcal pharyngitis ("strep throat") in close succession during the fall of 2018.  Due to these illnesses, by mid-November 2018, that is to say, approximately three months into the school year, Ms. Myers had used all eleven of her allotted paid leave days plus an additional six days of unpaid leave, for a total of seventeen absences.  In counting up these absences, by November 12, 2018, Ms. Myers had worked 46 of the 63 school days, for a total of 360 hours.

Ms. Myers claims that throughout this same time period, Ms. Roth had engaged in a concerted effort to induce her to quit working for Bright Elementary.  This effort began, according to Ms. Myers, upon first meeting Ms. Roth, when Ms. Roth remarked, "Oh, you're Missy Myers, I've heard a lot about you, you have problems at home."  Myers Dep. at 39.  Over the next few months, Ms. Roth stated on several occasions that she believed Ms. Myers was depressed because of the recent death of her husband, that the depression was making Ms. Myers sick, and that Ms. Myers should quit working for Bright Elementary and start a "design" or "craft" business.

During this same time period, Ms. Roth also suggested to Ms. Myers more than once that she (Myers) should attend mental health counseling at Bridges Counseling and

4

Family Services Center, which is located in Aurora, Indiana, a town near Bright Elementary. After Ms. Roth made this suggestion, Ms. Myers discovered on two separate occasions a brochure from Bridges in her school mailbox, which she took to imply that she should seek mental health counseling. When asked by Ms. Myers about the brochures, Ms. Roth admitted in the presence of Bright Elementary teacher, Rebecca Lail, that she had placed the material in Ms. Myers's mailbox, informing Ms. Myers that she did so because she believed Ms. Myers had "mental issues" and needed counseling. Myers Dep. at 44, 45; Lail Aff. ¶¶ 13–20.

Ms. Roth has testified, however, that she did not place brochures in Ms. Myers's school mailbox, but instead mailed to Ms. Myers, via the United States Postal Service, an Employee Assistance Program ("EAP") brochure because Ms. Myers had suffered a "tragic event" and she believed the EAP provider offered "tragic event service" to employees. While there is no such service listed in the brochure, the brochure does list "depression" as an issue for which services are provided. Ms. Myers denies ever receiving the EAP brochure in the mail.

**Plaintiff Issued Verbal and Written Warnings for Excessive Absences**

According to Ms. Myers, on Friday, November 9, 2018, Ms. Roth verbally reprimanded Ms. Myers regarding her attendance issues, stating that Ms. Myers had "too many absences" and that she would be terminated if she "missed one more day." Myers Dep. at 56. Ms. Myers claims that Ms. Roth stated that she was not going to write up Ms. Myers for her absences at that time, however. Ms. Roth denies that this conversation ever occurred.

Following the ensuing weekend, on Monday, November 12, 2018, Ms. Roth met with Ms. Myers to discuss her absences.  During that meeting, Ms. Myers explained to Ms. Roth that she had been sick with strep throat during her most recent absence, which period had included six consecutive school days from October 25, 2018 to November 2, 2018.  According to Defendants, Ms. Myers did not explain or discuss any of her other absences at that meeting, nor, apparently, did Ms. Roth speak with administrative staff to investigate the explanation for Ms. Myers's other absences.  In this litigation, Ms. Myers claims that all her absences during the 2018–2019 school year were due to illness, that she called in each time she was absent, and that she provided school administrators with doctor's excuses for many of those absences.

Following their conversation, Ms. Roth issued a written warning to Ms. Myers dated November 12, 2018, stating as follows:

> I am writing to express my concern regarding your excessive absences at work.  According to my documentation, you missed 14.5 days, in addition to the allotted 11 sick and 3 personal days (totaling 25.5 days) in the 2017–2018 school year.  You have missed your allotted 8 sick and 3 personal days, and an additional 6 unpaid days (totaling 17 days) to date in the 2018–2019 school year. Your position is a valuable asset to student learning.  Because of this, I expect to see a drastic improvement in attendance or you will be at risk of termination due to excessive absences.

Dkt. 50-6.

**Plaintiff Resigns**

The following day, on November 13, 2018, Ms. Myers resigned her employment effective November 16, 2018.  Ms. Myers testified that she resigned because she believed Ms. Roth would terminate her if she continued experiencing health issues and missed any

additional days of work.  Ms. Myers had no other "black marks" on her record, "so instead of being fired, [she] thought it would look better if [she] left."  Myers Dep. at 62–63, 70, 71.

**The Instant Litigation**

Ms. Myers filed her complaint in this action on February 28, 2020, which she then amended on April 1, 2021, alleging claims against Defendants for interference with her rights under the FMLA and/or for retaliation for having engaged in protected activity under the FMLA; disability discrimination in violation of the ADA, as amended by the ADAAA; and an equal protection claim against Ms. Roth in her individual capacity. Now before the Court is Defendants' motion seeking summary judgment on each of these claims.

## Legal Analysis

### I.    Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

## II.     Discussion

Ms. Myers alleges in her complaint that Defendants interfered with her rights under the FMLA and/or retaliated against her for having engaged in protected activity under the FMLA; discriminated against her under the "regarded as" and/or "record of" prongs of the ADA, as amended by the ADAAA; and that Ms. Roth violated Ms. Myers's Fourteenth Amendment equal protection rights.  We address each of these claims in turn below.

### A.  FMLA Interference and Retaliation Claims

Two types of claims are recognized under the FMLA: (1) claims of employer interference with an employee's exercise or attempt to exercise any FMLA right, and (2) claims of employer retaliation for an employee's exercise of those rights.  *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 816, 819 (7th Cir. 2015); *see* 29 U.S.C. § 2615, 29 C.F.R. § 825.220.  Here, Ms. Myers alleges that Defendants interfered with the exercise of her FMLA rights by using her previous FMLA leave as a negative factor in the issuance of the November 12, 2018 write-up for "excessive absences" and by threatening her with termination if she missed "one more day of work," irrespective of illness.  Am. Compl. ¶¶ 79–83.  In the alternative, Ms. Myers alleges that Defendants retaliated against her "by pre-emptively precluding" her "from taking any FMLA leave for the balance of the school year 2018–2019 or subsequent school years." *Id.* ¶ 84.  For the following reasons, neither of these claims can survive summary judgment.

To prove a claim for FMLA interference, Ms. Myers must establish the following five elements: (1) she was eligible for FMLA leave; (3) the School was covered by the

FMLA; (3) she was entitled to leave under the FMLA; (4) she provided notice of her intent to take leave; and (5) the School denied or interfered with the FMLA benefits to which she was entitled. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 365 (7th Cir. 2020). Defendants contend that they are entitled to summary judgment in their favor on this claim because, although they concede that the School is covered by the FMLA, Ms. Myers cannot prove any of the remaining four elements of her FMLA interference claim. Because we agree that there has been no evidence adduced to establish that Ms. Myers was entitled to leave under the FMLA or that she provided Defendants notice of her intent to take FMLA leave during the 2018–2019 school year, Ms. Myers's FMLA interference claim fails on these bases alone and we need not address Defendants' remaining arguments in support of summary judgment.

Even assuming that Ms. Myers was eligible for FMLA leave, she has provided no evidence to establish that she was entitled to such leave in the fall of 2018. "An employee is entitled to FMLA leave if (1) she is afflicted with a 'serious health condition,' and (2) that condition makes her unable to perform the essential functions of her position." *Valdivia v. Twp. High Sch. Dist. 214*, 942 F.3d 395, 398 (7th Cir. 2019). A serious health condition is an illness, injury, impairment or physical or mental condition that results in inpatient care or continuing treatment. 29 C.F.R. § 825.113(a).

Ms. Myers has adduced no evidence to show that any health condition she may have had in November 2018 required inpatient care or met the standards for continuing treatment as set forth in 29 C.F.R. § 825.115. Ms. Myers testified only that she suffered from depression, a thyroid condition, arthritis, and an ulcer condition in the fall of 2018.

While these conditions might have the potential in the abstract to qualify as "serious health conditions," Ms. Myers has failed to produce evidence that any of these conditions in the way(s) she suffered from them met the definition of a "serious health condition" or prevented her from performing the essential functions of her position as an IA as of November 12, 2018, the date on which Ms. Roth issued Ms. Myers the written warning about her absences.  Ms. Myers's speculation that she was likely to contract some illness in the future that might require FMLA leave is insufficient to support a finding that she suffered from an FMLA-qualifying condition at the time she alleges Defendants interfered with her FMLA rights.

Nor has Ms. Myers shown that she provided notice to Defendants of her intent to take FMLA leave as is required to establish FMLA interference.  The notice requirements for FMLA leave are set out in 29 C.F.R. § 825.302 and § 825.303.  With regard to foreseeable leave, such as for a planned medical procedure for a serious illness, the employer must be provided at least thirty days advance notice.  29 C.F.R. § 302(a).  Regarding unforeseeable leave, such as for emergency medical treatment, notice must be provided to the employer "as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).  Whether foreseeable or unforeseeable, the notice must contain "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request."  29 C.F.R. § 825.303(b).  Though the employee does not need to specifically request FMLA leave, merely calling in sick without additional information is insufficient.  *Lutes*, 950 F.3d at 366; *see also de la Rama v. Illinois Dep't of Hum. Servs.*, 541 F.3d 681, 687 (7th Cir. 2008) (calling in sick

without indicating that the seriousness of the employee's health condition would require an extended period of leave was insufficient to suggest an FMLA-qualifying condition). "This is true even if the employee provides her employer with a doctor's note if the note does not convey the seriousness of her medical condition." *de la Rama*, 541 F.3d 681 at 687.

Here, it is undisputed that Ms. Myers called in sick on several occasions in the Fall 2018 semester.  However, "'[s]ick' does not imply a 'serious health condition.'" *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001).  Ms. Myers has adduced no evidence to establish that she provided any additional information to the School on any of those occasions that would have alerted Defendants that she was in fact suffering from an FMLA-qualifying condition nor did the doctor's notes that she provided supply such notice, since those notes do not explicitly say that Ms. Myers was sick, much less specify any particular medical condition from which she was suffering.

Although "an employee may be excused from expressing a need for medical leave" in some cases, such as "when circumstances provide the employer with sufficient notice of the need for medical leave," *Burnett v. LFW Inc.*, 472 F.3d 471, 479 (7th Cir. 2006), "[t]he FMLA does not require employers to play Sherlock Holmes, scanning an employee's work history for clues as to the undisclosed, true reason for an employee's absence." *de la Rama*, 541 F.3d at 687.  Given that Ms. Myers herself testified that she had no intention to take FMLA leave in the Fall of 2018, we find it difficult to understand how Defendants could have been on notice at the time Ms. Myers was issued the written warning on November 12, 2018 that she intended to take leave that even she had no

intention to request.  For these reasons, Defendants are entitled to summary judgment on Ms. Myers's FMLA interference claim.

Ms. Myers's claims under an FMLA retaliation theory fare no better.  An employer who discriminates against an employee for engaging in protected activity, such as seeking FMLA leave, is liable for FMLA retaliation.  29 U.S.C. § 2615(a).  To establish a claim for FMLA retaliation, Ms. Myers must prove that she (1) engaged in statutorily protected activity; (2) she was subjected her to an adverse employment action; and (3) the protected activity caused the adverse employment action.  *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018) (citation omitted).

Although not entirely clear, we understand Ms. Myers to argue here that Defendants retaliated against her in anticipation of her use of FMLA leave in the future when Ms. Roth, with knowledge that Ms. Myers had previously taken FMLA leave in the spring of 2018, threatened to fire her if she "miss[ed] one more day of work."  Ms. Myers argues that Ms. Roth's threat evidences her intent to foreclose any future use of FMLA leave by Ms. Myers, considering that, in the event Ms. Myers took FMLA leave, she would necessarily be missing at least one more day of work and would therefore be subject to termination.

Courts have recognized that "[a]ction taken against an individual in anticipation of that person engaging in [statutorily protected activity] is no less retaliatory than action taken after the fact …."  *Davidson v. Evergreen Park Cmty. High Sch. Dist. 231*, No. 15 C 0039, 2017 WL 2243096, at *9 (N.D. Ill. May 23, 2017) (quoting *Sauers v. Salt Lake Cty.*, 1 F.3d 1122, 1128 (10th Cir. 1993)).  Here, however, there is insufficient evidence

to indicate that Defendants had any reason to believe, much less fear, that Ms. Myers was about to use FMLA leave, particularly given that there is no evidence that Ms. Myers intended to request FMLA leave in the fall of 2018 or that she had expressed any such intent to Defendants. *See Davidson*, 2017 WL 2243096, at *9 (in granting the defendant summary judgment on the plaintiff's FMLA retaliation claim, observing that "unlike in *Sauers*, where there was evidence that the employee's supervisor feared that the employee was about to file a sexual harassment charge against him, 1 F.3d at 1128, Davidson has not identified any evidence that the District feared his future use of FMLA leave, or even that he intended to take future FMLA leave"). In fact, as discussed above, Ms. Myers has presented no evidence that she suffered from any FMLA-qualifying condition in November 2018 that would have entitled her to FMLA leave at that time.

Even assuming that Ms. Roth had commented that she believed "mental problems" or "mental issues" were causing Ms. Myers to be ill and had provided Ms. Myers with brochures for counseling services in the weeks leading up to her addressing Ms. Myers's absenteeism, there is no evidence that Ms. Roth believed FMLA leave for Ms. Myers was necessary, much less that she feared Ms. Myers was about to request such leave and acted in anticipation of such. Accordingly, Ms. Myers's preemptive retaliation claim cannot survive summary judgment.

Ms. Myers alternatively asserts that Ms. Roth used the fact the Ms. Myers's took FMLA leave in the spring of 2018 as a negative factor for discipline by using those FMLA days in "calculating the number of days [Ms.] Myers missed compared to the number of days she worked in the school year 2017-2018." Dkt. 51 at 37, 39. To the

extent this claim alleges FMLA retaliation as opposed to FMLA interference, it nonetheless fails.  Ms. Roth's November 12, 2018 written warning mentions nothing about Ms. Myers having taken FMLA leave, nor does it compare the overall number of days Ms. Myers worked in the 2017–2018 school year to the number of days missed that year.  Instead, the warning references only Ms. Myers's non-FMLA absences.  Ms. Myers points to an email chain between Ms. Roth and Mary Ann Baines, the Director of Financial Operations, containing handwritten notes that include Ms. Myers's FMLA leave in the calculation of the total number of days she missed in the 2017–2018 school year, as evidence that her FMLA leave was used against her.  However, as noted above, Ms. Myer's FMLA leave is not referenced in any manner in the written warning, much less referenced in a way that would suggest Ms. Roth was implying that Ms. Myers should not have taken FMLA leave or was being penalized for using such leave.  Accordingly, we find no support for Ms. Myers's contention that her prior use of FMLA leave was a factor on which Ms. Roth relied in issuing the written warning regarding Ms. Myers's absenteeism.  Defendants are therefore entitled to summary judgment on Plaintiff's FMLA retaliation claim.[2]

## B.  ADA Discrimination Claim

We turn next to address Ms. Myers's ADA discrimination claim, which she has brought under the "regarded as" and "record of" prongs of the statute.  To succeed on

---

[2] As discussed in detail in Section II.B. *infra*, Ms. Myers cannot establish that she was constructively discharged; thus, in addition to the deficiencies in her FMLA retaliation claim discussed above, she also cannot show that she was subjected to an adverse employment action. Defendants are therefore entitled to summary judgment on this alternative basis as well.

these claims under the ADA, a plaintiff must show that her employer took an adverse action against her based on a belief that the employee had a physical or mental condition that substantially limits one or more major life activities or a record of such an impairment. *See Richardson v. Chicago Transit Auth.*, 926 F.3d 881, 892 (7th Cir. 2019); *White v. Valeo Lighting Sys. N. Am., Inc.*, No. 4:19-cv-00226-TWP-DML, 2021 WL 5447075, at *5 (S.D. Ind. Nov. 22, 2021). Here, Ms. Myers claims that Ms. Roth regarded her as disabled because of her depression and/or that she had a record of such a disability because she had taken FMLA leave for her depression.[3]  According to Ms. Myers, because Ms. Roth regarded her as having a disability and/or because of her record of suffering from such an impairment, Ms. Roth harassed her and threatened to terminate her, which forced her to immediately resign. Because, for the reasons detailed below, Ms. Myers cannot show that Ms. Roth's conduct resulted in Ms. Myers's constructive discharge, Ms. Myers has failed to establish that she suffered an adverse employment action. Accordingly, her disability discrimination claim fails on this basis.

The Seventh Circuit has identified two different forms of constructive discharge: (1) when an employee resigns due to alleged discriminatory harassment, *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010); and (2) "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns …." *E.E.O.C. v. Univ. of Chicago Hosps.*,

---

[3] Defendants have not argued, so we do not address, whether these allegations are sufficient to establish that Ms. Myers in fact meets one of the definitions of "disabled" under the ADA, as amended by the ADAAA.

276 F.3d 326, 332 (7th Cir. 2002).  "Both forms [of constructive discharge] mandate that the plaintiff demonstrate an unendurable work environment," which "is a higher bar than a hostile work environment."  *Schneider v. United States Postal Serv.*, No. 16-cv-0013-bhl, 2022 WL 267903, at *9 (E.D. Wis. Jan. 28, 2022) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004); *Novak v. Nicholson*, 231 Fed. App'x 489, 493 (7th Cir. 2007)). Thus, "unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress."  *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997).

Ms. Myers argues that Ms. Roth's conduct towards her satisfies the requirements of either form of constructive discharge.  We do not agree, however.  "The discriminatory harassment form of constructive discharge is only found in the most exceptional situations." *Schneider*, 2022 WL 267903, at *10 (citing *Porter v. Erie Foods, Int'l Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (permitting a claim for constructive discharge when harassment involved repeated use of a noose and implied threats of violence); *Taylor v. W&S Life Ins. Co.*, 966 F.2d 1188, 1198–99 (7th Cir. 1992) (finding constructive discharge where supervisor brandished a firearm and held it to the plaintiff's head); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 417 (7th Cir. 1989) (finding constructive discharge where employee's HR manager repeatedly showed her racist pornographic pictures, told her she was hired to perform the sex act depicted in the pictures, and threatened to kill her)); *accord Chapin*, 621 F.3d at 679 ("[W]e have found constructive discharge when there is a threat to a plaintiff's personal safety."),

16

While it may have been discomfiting to Ms. Myers and an overstep for Ms. Roth to comment on three or four occasions within the first few months of the school year regarding the state of Ms. Myers's mental health and speculate that such issues were causing Ms. Myers's physical illnesses, suggesting that Ms. Myers should consider leaving her IA position to start a craft or design business, and twice placing mental health counseling brochures in Ms. Myers's school mailbox or mail an EAP brochure to her home, such treatment involved no threat to Ms. Myers's personal safety.  Nor can such treatment be considered particularly sustained or pervasive harassment.  For these reasons, we find that Ms. Myers's working conditions would not meet the standard required to be deemed even a hostile work environment, much more the intolerable and unendurable conditions required under Seventh Circuit case law to support a finding of constructive discharge based on harassment.  *See Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000) (observing that in cases finding constructive discharge, plaintiffs were subjected to severe and sustained harassment).

The facts here also do not support a finding of the second form of constructive discharge, which requires circumstances where the "handwriting was on the wall" signaling that the employee would be terminated, and the plaintiff quit "just ahead of the fall of the axe." *Chapin*, 621 F.3d at 679 (quoting *Lindale v. Tokheim Corp.*, 145 F.3d 953, 956 (7th Cir. 1998)).  Taking Ms. Myers's version of events as true, as we are required to do at the summary judgment stage, Ms. Roth told Ms. Myers on November 9, 2018 that she would be terminated if she missed another day of work, and then, on November 12, 2018, softened that ultimatum by issuing Ms. Myers a  written warning

providing that she (Roth) "expect[ed] to see a *drastic improvement* in attendance or [Ms. Myers would] be *at risk* of termination due to excessive absences."  Dkt. 50-6 (emphasis added).

It was not reasonable for Ms. Myers to have assumed under these circumstances that had she not resigned, she would have been immediately terminated, as she must demonstrate to show she was constructively discharged.  *See Chapin*, 621 F.3d at 680 ("Here, even construing all the evidence in [the plaintiff's] favor, no reasonable employee standing in [the plaintiff's] shoes would believe that had he not resigned, he would have been immediately fired.").  Here, the clear intent of Ms. Roth's warning about Ms. Myers's attendance was to inform her that she was needed in the classroom for student learning and *if* she did not improve her attendance, *then* she would be subject to a risk of termination.  While Ms. Roth's warning undoubtedly raised the specter of termination, Seventh Circuit law is clear that "a working condition does not become intolerable or unbearable merely because 'a prospect of discharge lurks in the background.'"  *Id.* (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)).  Instead, the Seventh Circuit has specifically ruled that "an employee is not constructively terminated even when the employer begins a process that stands a high chance of ending with termination."  *Rasmusson v. Ozinga Ready Mix Concrete, Inc.*, No. 19-C-1625, 2021 WL 179599, at *9 (E.D. Wis. Jan. 29, 2021) (citing *Cigan*, 388 F.3d at 333–34).  At most, Ms. Myers has shown that Ms. Roth's warnings made her believe that she (Myers) would be unable to improve her attendance to a sufficient degree to satisfy Ms. Roth and was therefore likely to be terminated for absenteeism at some point in the future; even so,

that is not enough to prove constructive discharge under Seventh Circuit precedent.  For these reasons, Ms. Myer's claim fails in which she maintains that she was constructively discharged because her termination was imminent at the time she resigned.  Because Ms. Myers has identified no other adverse employment action to which she alleges she was subjected, her disability discrimination claim cannot survive summary judgment.

### C.  Equal Protection Claim

Finally, Ms. Myers claims that in disciplining her based on her "excessive absences" but not disciplining any other employees whose absences exceeded the School's allotted paid leave, Ms. Roth violated Ms. Myers's rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment by singling her out for discipline based on what Ms. Roth regarded as a disability.  Disability-based equal protection claims such as that alleged here are subject to rational basis scrutiny.  *See, e.g.*, *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 737–38 (7th Cir. 2000).  To prevail under the rational basis standard, Ms. Myers must show that "the defendant intentionally treated [her] differently from others similarly situated, (2) the defendant intentionally treated [her] differently because of [her] membership in the class to which [she] belonged, and (3) the difference in treatment was not rationally related to a legitimate state interest."  *Smith v. City of Chicago*, 457 F.3d 643, 650–51 (7th Cir. 2006).

Ms. Roth seeks summary judgment on Ms. Myers's equal protection claim based on a total lack of evidence that Ms. Myers was treated differently than any similarly situated employee or that such treatment was because of her membership in the class of employees "regarded as" disabled or having a "record of" such an impairment.  Ms. Roth

19

further argues that, even if Ms. Myers *had* made such a showing, any such differential treatment was rationally related to a legitimate state interest, to wit, serving the educational needs of students by ensuring regular staff attendance.  Because we agree with Ms. Roth that Ms. Myers has failed to establish that she was treated differently from other similarly situated employees based on a "regarded as" or "record of" disability, we need not consider whether such treatment was rationally related to a legitimate state interest.

To show she was intentionally treated less favorably than others similarly situated, Ms. Myers "must introduce evidence of similarly situated comparators."  *Reinebold v. Bruce*, 18 F.4th 922, 925 (7th Cir. 2021).  "To be similarly situated, comparators must be prima facie identical in all relevant respects."  *Id.* at 926 (citations and quotation marks omitted).  Here, Ms. Myers references to nothing beyond her own speculation that other, unnamed employees had absences in excess of their allotted paid leave, but, unlike her, were not disciplined or threatened with termination.  She concedes that she is unaware of the number of absences any such employees had in excess of their allotted paid leave.

Ms. Roth argues that Ms. Myers cannot satisfy her burden of identifying a similarly situated comparator because, at the time Ms. Myers was issued the warning about her excessive absences, no other employee had as many absences in excess of their allotted paid days off as Ms. Myers; thus, no other employee engaged in conduct of comparable seriousness.  Without Ms. Myers having identified any of the employees she contends are similarly situated to her, it is impossible for the Court to determine whether they are in fact comparable, particularly with regard to whether the extent of their

absenteeism was comparable to hers.  Further, Ms. Myers has failed to present any

evidence to establish whether these other, unnamed employees were "regarded as"

disabled by Ms. Roth or had a "record of" a disability to permit the Court to determine

whether such employees were outside the protected class to which Ms. Myers contends

she belongs.  "Summary judgment is the 'put up or shut up' moment in a lawsuit." *Siegel*

*v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting *Johnson v. Cambridge*

*Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*).  Because Ms. Myers has

failed to adduce any evidence to establish these essential elements of her equal protection

claim, summary judgment must be granted in Ms. Roth's favor.

## III.    Conclusion

For the reasons detailed above, we <u>GRANT</u> Defendants' Motion for Summary

Judgment.  Final judgment shall be entered accordingly.

IT IS SO ORDERED.


Date: _____3/29/2022_____          _~Sarah Evans Barker~_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

21

Distribution:

Sara R. Blevins
LEWIS & KAPPES PC
sblevins@lewis-kappes.com

Tae K. Sture
STURE LEGAL SERVICES LLC
tae@sturelaw.com